**Juan BRACHE, Petitioner, Appellant,**

v.

**UNITED STATES of America,
Respondent, Appellee.**

**No. 97–1575.**

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1998.

Decided Jan. 22, 1999.

---

100

Spencer C. Demetros, by appointment of the court, with whom Law Offices of Spencer C. Demetros was on brief for petitioner.

Alicia M. Milligan, Assistant United States Attorney, with whom Sheldon Whitehouse, United States Attorney, and Margaret E. Curran and Zechariah Chafee, Assistant United States Attorneys, were on brief for respondent.

Before BOUDIN, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

BOUDIN, Circuit Judge.

Juan Brache sought collateral relief under 28 U.S.C. § 2255 from a jury conviction under 18 U.S.C. § 924(c)(1) for using or carrying a firearm during and in relation to a drug-trafficking crime. Brache claimed that the jury instruction as to "use" of a firearm under section 924(c)(1) was overbroad—measured by the definition later adopted by *Bailey v. United States*, 516 U.S. 137, 143–46, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Although the government admits that the instruction was not correct, it argues (and the district court agreed) that relief was not warranted. We affirm.

The necessary history is brief. In January 1994, Brache was tried by a jury and convicted of possessing cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), possessing a firearm after a felony conviction, 18 U.S.C. § 922(g)(1), and using or carrying a firearm during and in relation to a drug crime, *id.* § 924(c). As required by statute, the 5–year prison sentence on the use or carry count was made to run consecutively after the concurrent 21–month sentences on the first two counts.

At the time of the trial, various circuits, including this one, employed a broad definition of "use," *see, e.g., United States v. McFadden,* 13 F.3d 463, 465 (1st Cir.1994), permitting conviction if the weapon was merely available, and the jury was so instructed. Brache made no objection at trial and no claim of error on his direct appeal to this instruction. He did appeal on other grounds, but these were rejected in an unpublished *per curiam* opinion, *United States v. Brache,* No. 94–1366, 1995 WL 54081 (1st Cir.1995). Later that same year, the Supreme Court in *Bailey* interpreted the "use" requirement of section 924(c)(1) to require *active* use, contrary to the definition previously approved in this circuit and given in the instruction at Brache's trial. *Bailey,* 516 U.S. at 143–46, 116 S.Ct. 501.

In January 1996, Brache moved under 28 U.S.C. § 2255 to invalidate his section 924(c)(1) conviction on the ground that the instruction as to "use" was prejudicial error in light of *Bailey.* In February 1997, the district court denied the motion. *See Brache v. United States,* 957 F.Supp. 20 (D.R.I.1997). The district court assumed that *Bailey* would apply "retroactively" to a conviction that became final before *Bailey*—as the Supreme Court later confirmed in *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1609–10, 140 L.Ed.2d 828 (1998) [1]—but concluded that the evidence warranted Brache's conviction under the "carry" prong of the statute. *See Brache,* 957 F.Supp. at 25. Brache now appeals.

■ We affirm the district court, but upon a different ground based on an intervening Supreme Court decision. The district court was quite right that the evidence would have justified a conviction of Brache for carrying a firearm during and in relation to a drug crime. The evidence at trial showed that the police had conducted a raid in April 1993 at a house in Providence, Rhode Island. As the police approached the second-floor apartment in which Brache was located, a detective stationed in the basement (because forewarned by a tip) witnessed a .38–caliber pistol, several .38–caliber bullets, and a cigarette pack containing 21 small bags of cocaine fall to the floor at the base of the basement chimney. A vent in the wall of the living room in the raided apartment connected to the chimney shaft. Other evidence proved that someone was dealing drugs from the apartment.[2]

There were two other persons in the apartment along with Brache when the police entered; one was a drunkard from the neighborhood and another a prostitute. Yet both were in the kitchen when the police entered, while Brache alone was seen entering the kitchen from the living room. The gun and cigarette pack bore no fingerprints, but Brache was smoking a brand of cigarette matching the pack that had been dropped into the basement along with the pistol. In short, the evidence pointed to Brache as culprit, but this judgment was up to the jury.

From the jury's verdict on the first two counts, it is evident that the jury agreed that Brache was the one who possessed the drugs, intended to distribute them, and also possessed the gun. To reach this conclusion, the jury must have believed that Brache had carried the gun and the drugs into the living room and dropped them into the basement; this inference, after all, was easy to draw from the testimony and—more important—supplies the only direct evidence to support *any* of his convictions. To this extent, the jury's verdict itself establishes that Brache both possessed the drugs with intent to distribute and carried the gun.

■ However, we do not know from the jury verdict whether the jury concluded that Brache carried the gun "during and in relation to" a drug trafficking crime. It must be assumed, favorably to Brache, that the jury convicted only on the use prong—easy to do under the old definition of use—and never

---

1. From the Supreme Court's standpoint, the *Bailey* holding did not involve a "new" rule at all but rather an elucidation of what the criminal statute had always meant, making the "retroactivity" jurisprudence inapposite. *See Bousley,* 118 S.Ct. at 1610.

2. While the police were present, six or seven other individuals came to the door of the apartment; they each asked for "a bag" and pushed some money through a slot.

considered the carry prong of the statute.[3] And if the jury had confronted the carrying prong, perhaps it might have thought that because Brache was ridding himself of the evidence, when he carried the gun to the vent, his carriage of the gun was no longer "in relation to" a drug trafficking crime—or perhaps even that the drugs were no longer being possessed with "intent to distribute."

In practice, these niceties might well have meant nothing to the jury once it concluded that Brache carried both the gun and the drugs. But while the breadth of the "during and in relation to" requirement would easily have permitted conviction on the carry prong, the vagueness of the phrase makes it harder to predict just what a jury would have done on our somewhat unusual facts. Further, Supreme Court precedent leaves it unclear just how far we are permitted to speculate about likely outcomes where, as here, the mis-instruction makes it uncertain whether the jury did in fact find a necessary element of the crime, an issue we are happy to defer. *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

■■■ In all events, an intervening Supreme Court decision virtually compels affirmance on a procedural ground. Because Brache did not object to the faulty "use" definition, he cannot prevail on collateral attack unless he can show both "cause" and "prejudice" or, alternatively, that he is "actually innocent." *Murray v. Carrier*, 477 U.S. 478, 485, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Brache claims that he had "cause" for not objecting to the jury instruction because there was "no reasonable basis in existing law," *Reed v. Ross*, 468 U.S. 1, 15, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), for a challenge to the broad definition of "use" in the court's instruction.

In a different situation, we might find Brache's argument attractive, since the instruction was at the time correct under First Circuit precedent. Here, however, the Supreme Court has made the determination for us. In *Bousley*, the Court ruled that a section 2255 petitioner who argued that his guilty plea for "using" a firearm under section 924(c)(1) was invalid—because the definition of "use" explained to him by the district court had been improperly broad—had procedurally defaulted because he had not pursued the claim on direct appeal. *See Bousley*, 118 S.Ct. at 1611. The Court stated that "the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession'" at the time of the petitioner's plea. *Id.*

Brache argues that *Bousley* does not control the result of this case because this case involves jury instructions and *Bousley* involved a defendant who pled guilty. But a defendant who pleads guilty pursuant to a mistaken understanding of "use" is misled as much as a jury given the same instruction. And, in either case, the defendant had the opportunity to challenge the definition in the trial court and on appeal. Indeed, the defendant who pleads arguably suffers the greater disadvantage, since he alone may not get his plea bargain if he insists upon reserving a legal issue for appeal.

■■■ We could also grant collateral relief if Brache showed that he was actually innocent of a violation of section 924(c)(1), a test that is implemented by asking if without the error "it is more likely than not that no reasonable juror" would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). As we have already said, the jury's implicit findings in this case are tantamount to the conclusion that Brache carried the gun during and in relation to a drug trafficking crime. This case is very far away from actual innocence.

On the present facts, few would think that Brache was wrongly imprisoned under the use-and-carry statute. But more than a few might be startled at *Bousley*'s conclusion that the "use" issue had to be raised at all to avoid the cause and prejudice bar. After all,

---

3. This is the rule where the instructions are prejudicially erroneous as to one theory but sound as to the other and there is no way to determine (*e.g.*, there is no special verdict) which course the jury followed. *See Griffin v. United States*, 502 U.S. 46, 50, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). The rule is to the contrary where the defendant's claim is simply that the evidence was inadequate on one theory but adequate on the other. *Id.* at 49–50, 112 S.Ct. 466.

the request for a narrower construction of "use" had earlier been rejected in this circuit. *See United States v. Cleveland,* 106 F.3d 1056, 1065 (1st Cir.1997). One might question whether litigants should be encouraged to raise over and over issues seemingly already settled in the circuit.

It is useful to put *Bousley* in context. The reach of habeas as a remedy was greatly enlarged by the Supreme Court in the 1960s, *e.g., Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), while at the same time the Constitution was read to regulate more and more of state criminal procedural and evidence law, *e.g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As with most revolutions, a counter-reaction developed, *e.g.,* Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142 (1970), but few of the landmark Warren Court precedents have been explicitly overruled.

Instead, both the Supreme Court and Congress have maintained, at least theoretically, the potentially broad reach of habeas but hedged it with a raft of new limitations that are largely procedural in character, and are framed and applied with considerable strictness.[4] The cause and prejudice rule is major element in this construct. Whether the present configuration of habeas doctrine is the happiest solution may be open to debate, but it is a compromise of conflicting pressures and is in any event binding upon us.

*Affirmed.*

---

4. *See, e.g.,* Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, §§ 104–107, 110 Stat. 1214 (1996); *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *McCleskey v. Zant,* 499 U.S. 467, 487, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Teague v. Lane,* 489 U.S. 288, 308–10, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Murray,* 477 U.S. at 485, 106 S.Ct. 2639.