William H. SIMPSON, Petitioner,
Appellee,

v.

James MATESANZ, Respondent,
Appellant.

No. 98–2343.

United States Court of Appeals,
First Circuit.

Heard April 8, 1999.

Decided May 4, 1999.

did not require an interactive process does not mean it would not have been worthwhile.

Susanne G. Levsen, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, was on brief, for appellant.

Dana A. Curhan for appellee.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

William H. Simpson was convicted in Massachusetts state court in 1974 of the murder of Thomas Morris, who was stabbed to death by Simpson's associate while Simpson beat Morris with a baseball bat and hammer. Simpson is serving a life sentence without parole.

At Simpson's trial, the trial judge instructed the jury, in accord with long-standing tradition, that absence of reasonable doubt meant the jurors must be sure to a "moral certainty." The judge defined moral certainty as the same degree of certainty jurors would want in making decisions of importance in their own lives. The judge also said that if the jurors had any serious unanswered questions about the defendant's guilt, they must acquit. Massachusetts courts had employed moral certainty instructions since they were approved in a murder case of much notoriety more than a century ago. *See Commonwealth v. Webster*, 59 Mass. (5 Cush.) 295, 320 (1850).

As times change, the meaning ascribed to particular words changes. In 1990, in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 73 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the Supreme Court found that instructions equating reasonable doubt with "substantial doubt" or "grave uncertainty," when coupled with a reference to moral certainty, could have impermissibly lowered the government's burden of proof. *See id.* at 40–41, 111 S.Ct. 328. In 1994, in *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Supreme Court noted that in 1850 "moral certainty meant a state of subjective certitude" but that more modern usage might lead a jury to "understand the phrase to mean something less than the very high level of probability required by the Constitution in criminal cases." *Id.* at 12, 14, 114 S.Ct. 1239. The court also held that the moral certainty phrase, if standing alone, was improper, but if put in adequate context with other instructions was not constitutionally improper. *See id.* at 15–16, 114 S.Ct. 1239. After these decisions came a series of attacks on *Cage/Victor* jury instruction errors in earlier state convictions by way of habeas corpus petitions in the federal courts.

Simpson brought exactly such an attack by petition for habeas corpus in federal court in 1997, although he had not challenged the instructions on those grounds at trial or raised those arguments on direct appeal of his conviction. In 1988, Simpson finally did raise challenges to the reasonable doubt jury instructions on two new trial motions in the state court, which were denied on waiver grounds. In 1990, the highest court of Massachusetts, the Supreme Judicial Court ("SJC"), denied review of his claims for post-conviction relief on the ground that his claims were neither new nor substantial. *See Commonwealth v. Simpson*, No. 90–274 (SJC for Suffolk County, Oct. 15, 1990).

The federal district court bypassed Simpson's procedural default in not raising his challenges at trial or on appeal by concluding that "procedural default ... cannot be inferred" from the SJC's denial and by finding that the state had created an exception to its contemporaneous objection rule when reasonable doubt instructions were involved. *Simpson*, 29

F.Supp.2d at 15–16. The district court thus reached the merits of the habeas question. On the merits, the district court found that the standards for issuance of habeas corpus had been met and granted the petition.

We reverse, holding that the state court's denial of review based on Simpson's procedural waiver constitutes an independent and adequate state ground and that Simpson has not excused his default by showing cause and prejudice for his waiver or by establishing his actual innocence. As such, a federal court is precluded from reaching the merits of his claims and it was error to grant the petition.

## I

We take the facts largely from the SJC decision affirming Simpson's conviction. *See Commonwealth v. Simpson*, 370 Mass. 119, 345 N.E.2d 899 (1976). On the morning of March 17, 1974, Simpson and his associate, Wardell Washington, broke into an apartment in Worcester, Massachusetts. They robbed the occupant, Thomas Morris, of approximately twenty-eight dollars, then left him beaten and stabbed to death. Simpson and Washington returned to Washington's apartment (which was located in the same building), changed their clothes, and—after concocting a story designed to divert attention from themselves—notified the police of the crime. Two women who shared Washington's apartment with Washington and Simpson testified about inculpatory conversations between Washington and Simpson as they planned the robbery, and to the statements by these two men after the robbery and murder had been committed.

Later that day, Simpson voluntarily went to a local police station and signed a written statement in which he reiterated their story: he and Washington had found Morris's body after becoming suspicious when they saw two men run from an alley next to the apartment building.

Within a few hours Simpson had changed his story. In addition, Simpson submitted to a "benzidine test." That test showed the presence of blood on his hands. Simpson was then taken into custody.

Some hours later, Simpson gave the police a second written statement. In that statement he confessed to his participation in the crimes. His confession was given after he was read his *Miranda* rights. The trial judge found, and the SJC affirmed, that the confession was given voluntarily. On October 31, 1974, a Massachusetts jury convicted Simpson of first degree murder, armed robbery, and breaking and entering.

On March 21, 1975, Simpson filed the first of six motions for a new trial. The motion was denied, and Simpson appealed both his conviction and the denial of this motion. He did not challenge the reasonable doubt jury instructions in either appeal.[1] The SJC heard the appeal of both

---

1. The jury instructions on reasonable doubt were as follows:

    Now, the words "beyond a reasonable doubt" are a legal shorthand expression that stand for the degree of certainty that is required before a jury may convict a person, any person, of a crime, any crime. It means that after weighing the testimony, evaluating whether you are going to believe any, part, all or none of any witness' story, after examining the exhibits, after hearing the whole case, the evidence that you have heard discussed amongst yourselves, you must, all 12 of you, be sure that he is guilty. Otherwise, he is entitled to the benefit of the doubt and must be acquitted.

    Now, when I say sure, I don't mean that the commonwealth has to prove a defendant's guilt to an absolute or to a mathematical certainty. That is not what we mean by beyond a reasonable doubt. But what we mean rather is that when all is said and done in your jury room, after you have gone over the testimony, the exhibits, after you have taken into consideration the law as I explain it to you, *you must be sure to a moral certainty, to that same degree of certainty which you would want when you have had to make decisions of importance in your own lives.* After you have discussed the evidence thoroughly amongst yourselves, if you have any *serious unanswered questions*

rulings under the authority of Mass. Gen. Laws ch. 278, §§ 33A–33G, and affirmed them both on April 9, 1976. *See Simpson,* 345 N.E.2d at 905.

Simpson launched his first assault on the reasonable doubt instructions in his third new trial motion, filed on April 25, 1988. In that motion, Simpson challenged the "moral certainty" language and the judge's comparison of reasonable doubt to the certainty that attends important decisions in the jurors' lives.

The motion was denied on waiver grounds, but Simpson did not seek leave to appeal from the single "gatekeeper Justice" of the SJC, pursuant to Mass. Gen. Laws ch. 278, § 33E. However, Simpson raised the same jury instruction objections in his fourth motion for a new trial, filed on November 3, 1988. That motion, too, was denied on waiver grounds; this time Simpson sought leave to appeal. On October 15, 1990, a gatekeeper Justice denied Simpson's motion for leave to appeal, stating that he was "persuaded by the arguments in the Commonwealth's opposition memorandum that the defendant ha[d] not demonstrated that any of the issues which he … [sought] to raise [were] new or substantial." *Commonwealth v. Simpson,* No. 90–274 (SJC for Suffolk County, Oct. 15, 1990).

In his fifth motion for a new trial, Simpson raised the same objections, this time under an ineffective assistance of counsel rubric, and was again rebuffed by the Massachusetts trial court. He did not seek leave under § 33E to appeal. Finally, approximately a year and a half later, Simpson filed a sixth motion for a new trial, dated June 28, 1994, in which he reiterated the previous objections and also challenged the "serious unanswered questions" language. A superior court judge denied the motion on grounds that the issues should have been raised on direct appeal and noted that the denials of his previous post-conviction attacks on the instructions rested on waiver grounds. On October 30, 1997, a gatekeeper Justice denied Simpson's § 33E application for leave to appeal.

## II

In April 1997, Simpson filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 2254. After acknowledging that "[a] petitioner's procedural default in state court is a 'typical' example" of an independent and adequate state law ground that could bar habeas review in a federal court, the district court considered whether Simpson had, in fact, procedurally defaulted by failing to challenge the reasonable doubt instructions in his first appeal or by failing to persuade the gatekeeper Justice that he had raised a new and substantial claim.[2] *Simpson v. Matesanz,* 29 F.Supp.2d 11, 14 (D.Mass.1998).

Reasoning that "[f]ailure to appear meritorious to a gatekeeper cannot plausibly be put on a par with failure to take certain standard steps, such as preserving issues by raising them on appeal," the court found that "failure to get past the gatekeeper does not by itself block federal habeas review unless the single Justice clearly bases his denial of leave to appeal on a procedural bar." *Id.* at 15 (citing *Little v. Murphy,* No. CIV.A. 95–10889–RGS, 1998 WL 704415, at *2 (D.Mass. May 21, 1998)).

The district court also rejected the argument that Simpson's failure to raise the objection in his first appeal, in contravention of the Commonwealth's contemporaneous objection rule, constituted

---

about the defendant's guilt, then he must be given the benefit of the doubt (emphasis added).

**2.** The district court rejected Simpson's argument that the Commonwealth had waived its affirmative defense of procedural default because Simpson did not exhaust his available state remedies until three weeks *after* the Commonwealth had filed its motion to dismiss on exhaustion grounds. *See Simpson,* 29 F.Supp.2d at 14.

a procedural default. The court offered two reasons for its conclusion. First, it found that in *Commonwealth v. Gagliardi,* 418 Mass. 562, 638 N.E.2d 20 (1994), the SJC had "explicitly waived the contemporaneous objection rule as applied to constitutionally deficient reasonable doubt instructions." *Simpson,* 29 F.Supp.2d at 16. While noting that this Circuit has stated that "review by the [SJC] under a 'miscarriage of justice' standard does not automatically waive the state's 'contemporaneous objection' rule, where the SJC has conducted its review only on state ... grounds," the district court found that *Gagliardi* "may well have changed the landscape." *Id.* (quoting *McCown v. Callahan,* 726 F.2d 1, 3 (1st Cir.1984), and citing *Tart v. Massachusetts,* 949 F.2d 490, 496 (1st Cir.1991) (internal quotation marks omitted)).

Second, the district court found that Simpson could not have raised the present objections on his first appeal in 1976, finding that it was not until 1977 "that the SJC first criticized the 'important decisions' language in jury instructions on reasonable doubt." *Id.* (citing *Commonwealth v. Ferreira,* 373 Mass. 116, 364 N.E.2d 1264, 1272–73 (1977)). The court also found that "moral certainty" language only "became a source of reversible error on the federal level" in 1990. *Id.* (citing *Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990)).

Having overcome the procedural hurdles, the district court then reached the merits of Simpson's petition and found the challenged phrases constitutionally defective, both individually and collectively. *See id.* at 18–21. The court held that these phrases created "compounded confusion," and saw no redeeming language in the judge's charge. *See id.* at 19. And after placing this court's decision in *Bumpus v. Gunter,* 635 F.2d 907 (1st Cir.1980), in "historic context," the district court determined that time had wrought "new, more rigorous standards for jury instructions," and that Simpson's instructions ought to

be judged under the current law, retroactively applied. *Simpson,* 29 F.Supp.2d at 21 (citing *Cage* ); *see also id.* at 16–17 (citing *Rodriguez v. Superintendent, Bay State Correctional Center,* 139 F.3d 270, 273–74 (1st Cir.1998), for the proposition that *Cage* "announced a new rule of constitutional law").

The district court ordered that the writ should issue, and the Commonwealth appeals.

## III

■ This habeas petition by a state court prisoner is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), amendments to 28 U.S.C. § 2254(d), which provide, in relevant part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . .

28 U.S.C. § 2254(d); *see also O'Brien v. Dubois,* 145 F.3d 16, 20 (1st Cir.1998). In reviewing a ruling on a petition for a writ of habeas corpus, we examine the district court's legal conclusions de novo. *See Curtis v. Duval,* 124 F.3d 1, 3–4 (1st Cir. 1997).

### A. *"Adjudicated on the merits"*

■ Habeas review is not available in federal court unless, to use the statutory term, it is review of a "claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). This language is in part a reference to the long-standing rule that federal courts do not

review state court decisions which rest on "independent and adequate state ground[s]." *Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 480, 139 L.Ed.2d 444 (1997); *see also Torres v. Dubois*, 174 F.3d 43, 45–46 (1st Cir.1999). Such independent and adequate state grounds exist where "the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement." *Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1172, 140 L.Ed.2d 182 (1998). In such a case, "[c]onsiderations of comity and federalism bar the federal court's review." *Id.*

*Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), held that a defendant's failure to object to a claimed judicial error (including one of constitutional dimension) at a state trial constitutes an independent and adequate state ground to uphold the conviction if the state has a contemporaneous objection rule and consistently enforces that rule. *See id.* at 85–87, 97 S.Ct. 2497. Massachusetts has such a contemporaneous objection rule. *See Torres*, 174 F.3d at 45–46; *Brewer*, 119 F.3d at 1001 (citing *Commonwealth v. Fluker*, 377 Mass. 123, 385 N.E.2d 256, 261 (1979)). Simpson did not raise on direct appeal any issue as to the jury instructions.

1. *Independent and Adequate State Grounds*

■ Because Simpson was convicted of murder in the first degree, his state appeals from the denial of state court collateral attacks on his conviction after his direct appeal were governed by Massachusetts General Laws ch. 278, § 33E. That state "gatekeeper" provision stops further

review of the prisoner's claim by the SJC, unless a gatekeeper Justice of the SJC finds that the prisoner's claim is "new and substantial." Mass. Gen. Laws ch. 278, § 33E. Where there has been procedural waiver below, the denial of review under § 33E is an independent and adequate state ground that bars federal habeas review. *Cf. Puleio v. Vose*, 830 F.2d 1197, 1199–1200 (1st Cir.1987); *McCown v. Callahan*, 726 F.2d 1, 3 (1st Cir.1984) (even grant of § 33E review under miscarriage of justice standard by SJC does not automatically waive the state's contemporaneous objection rule).

Here, Simpson's first petition under § 33E was denied by the SJC gatekeeper Justice on the ground that "the defendant ha[d] not demonstrated that any of the issues which he ... [sought] to raise [were] new or substantial." *Commonwealth v. Simpson*, No. 90–274 (SJC for Suffolk County, Oct. 15, 1990). The issues then sought to be raised in the § 33E petition included essentially the same issues sought to be raised by the federal habeas petition.[3] The facts here are that Simpson's new trial motions raising these challenges were denied by the trial court on waiver grounds, the SJC then denied § 33E review, and the SJC did so finding the claims were neither new nor substantial. To avoid the conclusion that this denial of the § 33E petition was an independent and adequate state ground, Simpson advances two theories, one of which was accepted by the district court. Neither is available to Simpson.

■ The first theory relies on an opinion from the district court of Massachusetts. That opinion holds that a denial of a § 33E petition by a gatekeeper Justice should not be considered an independent

---

**3.** It is far from clear that Simpson ever raised with the SJC on a § 33E application an objection to the "serious unanswered question" aspect of the jury charge. His application in response to the denial of his second motion for reconsideration of his sixth motion for new trial, which he has represented contains this objection, does not in fact recite that

language at all. In any event, the Commonwealth argues both that Simpson had waived the arguments prior to the § 33E application in question and that those arguments were not fundamentally different from the arguments presented earlier, as to which the SJC had already denied § 33E review. The gatekeeper Justice again denied § 33E review.

and adequate state ground if the petition is simply denied without explanation and a) the opinion below as to which § 33E review was sought addressed the merits of the claim, and b) the Commonwealth did not argue procedural waiver to the SJC as a basis for denial of the § 33E review. *See Little,* 1998 WL 704415, at *2, *cited in Simpson,* 29 F.Supp.2d at 15. This holding is based on the doctrine that the state decision must rest clearly on state grounds and may not rely on mixed federal and state grounds.[4] *See Coleman v. Thompson,* 501 U.S. 722, 733–34, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Brewer,* 119 F.3d at 999–1000.

Whether or not *Little* is good law, the *Little* rationale is simply inapplicable to Simpson's claims. The *Little* court did not consider the § 33E denial to be a bar because it found as a matter of fact that the state trial court had reached the merits of Little's claims, had held evidentiary hearings, and that the Commonwealth had never argued procedural waiver on this § 33E petition. *See Little,* 1998 WL 704415, at *2. That is not this case. Here the state trial court found procedural waiver, did not reach the merits, and it was that decision on which § 33E review was sought and denied.

It is also not our case because the gatekeeper Justice here concluded that the claims were not "new" under Massachusetts law, which defines "new" as follows:

An issue is not "new" within the meaning of G.L. c. 278, § 33E, where either it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review. The statute requires that the defendant present all his claims of

error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal.

*Commonwealth v. Ambers,* 397 Mass. 705, 493 N.E.2d 837, 839 (1986) (internal quotation marks omitted). Indeed, in *Ambers* the court found that an objection to a reasonable doubt jury instruction was not "new" because it could have been raised at trial or on appeal. *See id.* at 840.

Thus, the denial of the § 33E gatekeeper petition here is a finding by the SJC of procedural default on the part of the petitioner and, as such, is the classic example of an independent and adequate state ground. *See Burks v. Dubois,* 55 F.3d 712, 716 (1st Cir.1995); *see also Wainwright,* 433 U.S. at 86–88, 97 S.Ct. 2497; *Ortiz v. Dubois,* 19 F.3d 708, 714 (1st Cir.1994).

■ The second theory, relied on by the district court, also provides no escape from the conclusion that the state court decision is an independent and adequate state ground. The district court, relying on lower state court decisions, thought that the decision of the Supreme Judicial Court in *Commonwealth v. Gagliardi,* 418 Mass. 562, 638 N.E.2d 20 (1994), created an exception for reasonable doubt instructions to the Massachusetts contemporaneous objection rule. *See Simpson,* 29 F.Supp.2d at 16. From this the district court concluded that the state had not consistently applied its contemporaneous objection rule, at least where reasonable doubt instruction claims are involved, and so the rule cannot here be an adequate state ground. *See id.* When the state ground rests on a state finding of procedural waiver, federal courts will consider whether the state had consistently applied

---

4. A related point may be captured by a hypothetical. Suppose that the denial by the gatekeeper of the § 33E petition rests not on the miscarriage of justice standard but on a finding that while petitioner's claim is new, it is, nonetheless, not substantial—a conclusion reached by analysis under and resting on federal law. It could be cogently argued that such a denial does not rest purely on state law

and so is not independent. *Cf. Doucette v. Vose,* 842 F.2d 538, 539–40 (1st Cir.1988); *Lussier v. Gunter,* 552 F.2d 385, 388 (1st Cir. 1977). That hypothetical involves clear reliance on federal law and is vastly different from an order denying § 33E review without explanation from a decision in the trial court that there had been procedural waiver.

the state rule to determine whether the state ground is adequate. *Cf. Brewer*, 119 F.3d at 1001 ("State rules may not procedurally bar a federal court from hearing a *Batson* claim on timeliness grounds if the rule is not 'firmly established and regularly followed.'" (quoting *Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991))).

As the Supreme Court explained in *Ford*, "[i]n any given case, ... the sufficiency of such a rule to limit all review of a constitutional claim itself depends upon the timely exercise of the local power to set procedure. 'Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights.'" *Ford*, 498 U.S. at 423, 111 S.Ct. 850 (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457–58, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)). In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Court declined to apply a state procedural rule that "appeared in retrospect to form a consistent pattern of procedures, because the defendant ... could not be deemed to have been apprised of its existence." *Ford*, 498 U.S. at 423, 111 S.Ct. 850 (quoting *Patterson*, 357 U.S. at 457, 78 S.Ct. 1163) (internal quotation marks omitted).

In *Gagliardi*, the SJC decision on which the federal district court's finding of inconsistency was based, the SJC recites that it granted direct appeal from the trial court's denial of defendant's motion for a new trial. *See Gagliardi*, 638 N.E.2d at 21. Because the case did not involve a first degree murder conviction, § 33E did not, by its own terms, apply to the SJC's decision whether to take review in *Gagliardi*.

Gagliardi's motion for a new trial, filed pursuant to Massachusetts Rule of Criminal Procedure 30(b), had assailed various aspects of the jury instructions. *See id.* at 22–23. The SJC noted that the waiver rule described in *Commonwealth v. Watson*, 409 Mass. 110, 565 N.E.2d 408 (1991), "prevents the defendant from raising issues in a motion for new trial that he could have raised during a direct appeal." *Gagliardi*, 638 N.E.2d at 22 ("While a judge does have the discretion to rehear such questions, [the SJC] has recommended restricting the exercise of that power to those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result." (internal quotation marks omitted)). Finding no possibility of a miscarriage of justice, the trial court had considered all of Gagliardi's claims waived. *See id.* at 21. The SJC, however, chose not to apply the "*Watson* waiver rule" to Gagliardi's challenges to the reasonable doubt instructions in order to explore whether "a substantial miscarriage of justice very likely would result" from those jury instructions. *Id.* at 23 (citing *Victor v. Nebraska*, 511 U.S. 1, 19–22, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), and *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). After a substantive review of the instructions, the court found that the trial judge had appropriately described the constitutionally required level of proof, and there was no miscarriage of justice. *See id.* at 24–25, 114 S.Ct. 1239.

We view *Gagliardi* as yet another example of the routine application of SJC review under a "miscarriage of justice" standard, a standard that is also applied in the § 33E context.[5] *Gagliardi* itself refers to the miscarriage of justice standard as the reason for review. *See id.* at 23, 114 S.Ct.

---

**5.** We note that Rule 30 review and § 33E review are not necessarily identical. *See Commonwealth v. Francis*, 411 Mass. 579, 583 N.E.2d 849, 851–53 (1992) (noting that "where a defendant in a capital case seeks to appeal from a Superior Court ruling on a rule 30 motion filed after a rescript from [the SJC], the appellate procedure set forth in G.L. c. 278, § 33E, rather than the procedure set forth in rule 30, governs the appeal"). If that assumption was the basis for the district court opinion, it was in error. *See id.; see also Latimore v. Commonwealth*, 417 Mass. 805, 633 N.E.2d 396, 398 (1994).

1239; *see also Tart v. Massachusetts,* 949 F.2d 490, 496 (1st Cir.1991) (in case not under § 33E, where no objection made to jury instructions and SJC reviews only for miscarriage of justice in light of procedural waiver, the SJC decision is an independent and adequate state ground). *Gagliardi* does not say that it creates an exception to the contemporaneous objection rule or to the normal operation of state law under § 33E. If *Gagliardi* had intended to work such an important change in state law, we would have expected it to say so. This is particularly true where the change would have opened the door to federal habeas review of all Massachusetts challenges to reasonable doubt instructions regardless of procedural waiver. We are doubtful that the SJC, mindful of the federalism constraints on federal lower court review of its decisions, would have reached such a momentous result without any discussion.

Further, the cases after *Gagliardi* in which the Supreme Judicial Court did review reasonable doubt instructions not objected to at trial and in which review was pursuant to § 33E did so by explicitly referring to one of the categories under § 33E where review is permitted. In *Commonwealth v. Smith,* 427 Mass. 245, 692 N.E.2d 65 (1998), the court found that the defendants' claims were "new" within the meaning of § 33E. *See id.* at 68. In *Commonwealth v. Therrien,* 428 Mass. 607, 703 N.E.2d 1175 (1998), the gatekeeper Justice "allowed the defendant's appeal on the jury instructions in light of recent cases criticizing the use of 'moral certainty' language," and permitted the Commonwealth to argue the matter of whether the claims about the reasonable doubt instructions were "new and substantial" under § 33E to the full court. *See id.* at 1177 & n. 3. In neither *Smith* nor *Therrien* would any reference have been necessary to § 33E's "new and substantial" language if *Gagliardi* had created a special exception for reasonable doubt instructions.

This court has consistently held that such "miscarriage of justice" review by the SJC where there has been procedural waiver below does not mean that the state does not adhere to its contemporaneous objection rule or that the procedural waiver is not an independent and adequate state ground. *See Puleio v. Vose,* 830 F.2d 1197, 1200 (1st Cir.1987); *McCown v. Callahan,* 726 F.2d 1 (1st Cir.1984); *Gibson v. Butterworth,* 693 F.2d 16, 17 (1st Cir.1982). The reasons for this approach were well articulated in *McCown:*

> If federal habeas courts were too ready to find that state "miscarriage of justice" review constitutes "waiver" of the state's procedural rules, the state either would have to convert what is often a speedy reviewing task into a full scale detailed examination of federal law or it would have to abandon "miscarriage of justice" review altogether. The latter alternative seems highly undesirable. The former conflicts with the theory of *Wainwright.* That is to say, a state's efforts to stop gross miscarriages of justice should not suddenly force it to grapple with complex federal issues that its procedural rules would otherwise lawfully bar.

*McCown,* 726 F.2d at 3–4. *Gagliardi* does not change our view. The district court's conclusion to the contrary was error.

2. *Exceptions to Independent And Adequate State Grounds*

The matter does not end there. If Simpson can show "cause and prejudice" for his procedural default, a federal court will reach the merits of his habeas case. *See Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). Even if a petitioner does not show "cause and prejudice," a federal habeas court will still reach the merits if he can establish that any constitutional error in the jury instructions "has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Bousley,* 118 S.Ct. at 1611. The district court did not reach any of

these issues in light of its ruling that there was no independent and adequate state ground. The parties have briefed the issues to us and neither party has requested a remand on these points. We address the "actual innocence" test first.

#### a. *"Actual innocence"*

█ Simpson argues first that the standard applied is one of "fundamental miscarriage of justice," citing *Murray*, 477 U.S. at 495–496, 106 S.Ct. 2639, and second that any constitutional error in the jury instructions themselves leads to a substantial miscarriage of justice, citing *Gagliardi*. Both arguments mistake the applicable law. On the second point we note that the SJC's decision on what is a miscarriage of justice is a determination made under state law, *see Gibson*, 693 F.2d at 17, and does not answer the habeas question under federal law of whether there is actual innocence.

█ It is clear that for habeas purposes the federal "fundamental miscarriage of justice" standard means that petitioner must establish actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir.1995). To establish actual innocence, "petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." [6] *Schlup*, 513 U.S. at 327, 115 S.Ct. 851, *cited in Bousley*, 118 S.Ct. at 1611; *see also Brache v. United States*, 165 F.3d 99, 102 (1st Cir.1999). This exception is quite narrow and seldom used. *See Burks*, 55 F.3d at 717.

As the evidence described earlier makes clear, Simpson is far from being able to claim actual innocence. He confessed to his involvement in the murder, there was blood on his hands, and two witnesses testified about his planning the robbery and his conversations in the aftermath of the murder. We also note that his co-defendant, Washington, pled guilty to the murder. *See Simpson*, 345 N.E.2d at 905 n. 4.

Nonetheless, if Simpson can show "cause" and "prejudice" for his procedural waiver, there is federal habeas review of the merits of his claim.

#### b. *"Cause"*

Simpson argues that he had "cause" for not objecting to the jury instructions at the time of trial or at the time of his first appeal because "there was no reasonable basis in existing law." *Reed v. Ross*, 468 U.S. 1, 15, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). He relies on two arguments.

First, he says that the district court correctly concluded that it was not until 1977 that the SJC criticized the "important decisions" language in the reasonable doubt instructions, *see Commonwealth v. Ferreira*, 373 Mass. 116, 364 N.E.2d 1264, 1272–73 (1977), and that it was not until 1990 that the "moral uncertainty" language became a source of reversible error, *see Cage v. Louisiana*, 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 73 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, he says, his trial and appellate counsel did not have the arguments reasonably available.

Second, he argues that this court's decision in *Rodriguez v. Superintendent, Bay State Correctional Center*, 139 F.3d 270 (1st Cir.1998), which was decided before *Bousley*, compels the conclusion that the arguments were not reasonably available to him.

The Supreme Court recently gave a more restricted reading of "cause" for prisoner petitions than had been the view of this Circuit. *Compare Bousley*, 118

---

**6.** As in *Burks*, this conclusion is true whether we use the standard of *Murray* or of *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). *See Burks*, 55 F.3d at

718 n. 5 (citing *Murray*, 477 U.S. at 496, 106 S.Ct. 2639, and *Sawyer*, 505 U.S. at 348, 112 S.Ct. 2514).

S.Ct. at 1611 (decided May 18, 1998), *with Rodriguez,* 139 F.3d at 274 (decided March 23, 1998); *cf. Breest v. Cunningham,* 784 F.2d 435, 437 (1st Cir.1986). *Bousley* involved a first petition under 28 U.S.C. § 2255, the analogue for federal prisoners to 28 U.S.C. § 2254, the statute for state prisoners under which Simpson brought his petition. There is no reason to think that the definition of "cause" will vary between the two statutory provisions, and *Bousley* itself cites interchangeably to cases brought by state and federal prisoners. *See, e.g., Bousley,* 118 S.Ct. at 1610 (citing *Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994)); *see also Reed,* 512 U.S. at 353, 114 S.Ct. 2291 ("[I]t is scarcely doubted that, at least where mere statutory violations are at issue, § 2255 was intended to mirror § 2254 in operative effect."). Accordingly, we are required to apply the *Bousley* definition of "cause."

In *Bousley,* the petitioner had pled guilty in 1990 to "use" of a firearm under 18 U.S.C. § 924(c)(1) and sought through his § 2255 petition to take advantage of the narrow definition of "use" contained in the Supreme Court's 1995 decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In *Bailey,* the Supreme Court adopted "a more stringent standard" for the government's showing of "use" than had previously governed in the Circuit where Bousley had pled guilty. *See Bousley v. Brooks,* 97 F.3d 284, 287 (8th Cir.1996) (citing *Bailey,* 516 U.S. at 144, 116 S.Ct. 501), *rev'd,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

In the Supreme Court, Bousley argued that because neither he nor his counsel could have foreseen the *Bailey* decision

and because any such argument would have been futile in light of the law of the Circuit, he had shown cause. The Supreme Court rejected both the unavailability/unawareness and the futility arguments. As to the first argument, the Court held that there were cases available at the time of petitioner's plea in which parties had challenged the broader definition of the term "use." *See Bousley,* 118 S.Ct. at 1611. As to the futility argument, the Court repeated that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* (quoting *Engle v. Isaac,* 456 U.S. 107, 130 n. 35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)) (internal quotation marks omitted).

■ *Bousley* controls claims about jury instructions as well as about guilty pleas. *See Brache,* 165 F.3d at 102.[7] *Bousley* made it clear that if an issue has been decided adversely to an argument in the relevant jurisdiction, and the argument is not made for that reason, that is insufficient reason to constitute cause for a procedural default. *See Bousley,* 118 S.Ct. at 1611. In *Brache,* this court noted that this conclusion may seem surprising to many and that the unfortunate effect of this decision may be to encourage litigants "to raise over and over issues seemingly already settled in the circuit." *Brache,* 165 F.3d at 102–03. *Brache* also noted that *Bousley* must be read in context as a method of limiting habeas review in response to the earlier expansion of habeas and other protections for criminal defendants by the federal courts in the 1960s. *See id.* at 103. We think *Bousley*'s use of "cause" is limited to the habeas and § 2255 context, but in that context it has real bite.[8] *Bousley*'s rule may seem harsh,

---

**7.** The Sixth Circuit has disagreed with our holding in *Brache* that the *Bousley* definition of cause is not limited to guilty plea situations. *See Hilliard v. United States,* 157 F.3d 444, 450 n. 4 (6th Cir.1998). But the Second, Third, Fifth, and Tenth Circuits agree with our view. *See United States v. Leopard,* 170 F.3d 1013, 1016–17 (10th Cir.1999); *DeJesus*

*v. United States,* 161 F.3d 99, 103 (2d Cir. 1998); *United States v. Ramos,* 147 F.3d 281, 287 (3d Cir.1998); *United States v. Sorrells,* 145 F.3d 744, 750 n. 4 (5th Cir.1998).

**8.** Thus, this definition of cause does not apply in the many other areas of law dealing with

and reflects a further restriction on federal habeas, but it bears note that a real claim of actual innocence trumps this restriction. *See Bousley,* 118 S.Ct. at 1611. It also bears note that state prisoners, at least in Massachusetts, are still left in a better position than federal prisoners. That is because the state prisoners can seek review in the state high court, an alternative not open to federal prisoners, and the state standard for excuse from waiver may well be more lenient than the federal cause standard. *See, e.g., Smith,* 692 N.E.2d at 72.

The question here concerns the implications of *Bousley.* Ours is a situation in which the state's highest court at the time of trial and appeal had not squarely faced and rejected the sort of claims now made by petitioner, which involve a "moral certainty" instruction that was blessed in 1850 and widely used since, and in which claims of the sort now made about the reasonable doubt instructions had surfaced in some cases and commentary but were not widely accepted. On one hand, *Bousley* cites to the familiar standard of *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), that if a claim "is so novel that its legal basis is not reasonably available to counsel," there is cause for procedural default. *Id.* at 16, 104 S.Ct. 2901, *cited in Bousley,* 118 S.Ct. at 1611. On the other hand, it seems an odd result that a default is not excused where counsel failed to make an objection because the law was squarely against him, but a failure to make an objection may be excused where there was no controlling precedent against the claim. The incentives to raise claims are stronger when they have not been squarely rejected. The logic of the futility analysis, it may be thought, spills over into the "unavailability" analysis and that logic would make it harder for a habeas petitioner to show that a claim was not reasonably available. And yet, such a logic would mean that there would be almost no situation in which a petitioner could show cause procedural default. *Cf. United States v. Tic-*

based on the unavailability of an argument at the relevant time, a conclusion we are reluctant to reach. Of course, the other methods of showing cause under *Murray*—that is, some objective factor impeding counsel's efforts to comply with a state's procedural rule or the unavailability of facts—would still survive, but neither of those assist Simpson. In the absence of better guidance, we will assume arguendo that the familiar *Reed* unavailability standard is still good law, subject to *Bousley*'s caveat that an argument is not unavailable simply because it has been rejected by a higher court in a different case.

■ The "cause" inquiry thus turns to the caselaw and commentary on reasonable doubt instructions extant at the time of Simpson's trial in 1975 and his first appeal in 1976. The focus is not on when the Supreme Court first raised or resolved issues about instructions of the type given here. And the focus must account for the considerations of finality and comity that animated *Bousley* and other interpretations of when an argument is reasonably unavailable. *See Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). We also stress that this is an issue of federal law and that the federal court must exercise its independent judgment. *Cf. O'Brien,* 145 F.3d at 24.

Petitioner argues that we have already made that judgment in the *Rodriguez* case, in which this court held that a moral certainty claim was not available to a prisoner in 1984 and so those claims were "previously unavailable" for purposes of the limitation on successive habeas petitions in AEDPA. *See Rodriguez,* 139 F.3d at 274. *Rodriguez* concerned the statutory limitations on second or successive habeas petitions and not whether there was cause for procedural default to avoid independent and adequate state grounds on a first habeas petition. *See id.* at 271–72. We need not and do not decide whether the test for "previously unavailable" for successive ha-

*chiarelli,* 171 F.3d 24, 31–34 (1st Cir.1999).

beas petitions under AEDPA is the same as the "unavailability" prong of the cause standard to overcome a state prisoner's procedural default for purposes of a first habeas petition under AEDPA. It suffices to say that *Rodriguez* held that claims about moral certainty instructions were previously unavailable because they would have been futile. *See id.* at 274. In light of *Bousley*'s clear mandate, issued after *Rodriguez,* we are precluded from saying that the futility of the reasonable doubt instruction challenges would constitute cause excusing Simpson's procedural default. *See Bousley,* 118 S.Ct. at 1611.

*Rodriguez* is, however, instructive for its holding that the issue had been settled in favor of the constitutionality of moral certainty instructions in the First Circuit by 1984, in a series of decisions dating back to 1980 in both direct appeals and on habeas. *See Rodriguez,* 139 F.3d at 274. This means the issue had been raised before those dates.

██ We turn to Simpson's other argument, that the contemporaneous caselaw and commentary did not deal with the challenges he now raises, and so those arguments were novel and not reasonably available at trial or on appeal. Simpson bears the burden of proof on this issue. *See Murray,* 477 U.S. at 497, 106 S.Ct. 2639.

Three portions of the reasonable doubt charge are challenged in this habeas petition: the use of the term "moral certainty," the analogy of the decision faced by the jurors to "decisions of importance in [their] own lives," and the instruction that Simpson must be given the benefit of the doubt if a juror had "serious unanswered questions about [his] guilt." For the reasons that follow, we find that these claims were not so novel as to be unavailable to counsel at Simpson's trial and on appeal. Indeed, Simpson's counsel did object at trial to the failure to give an instruction as to the difference between the burden of proof in criminal and in civil cases, but did not raise the claims now asserted and

chose not to press even this point on appeal.

In 1970, the Supreme Court made it clear that the Due Process Clause of the Fourteenth Amendment requires that the government bear the burden of proving every element of a charged crime. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Winship* has since provided the basis for attacks on jury instructions that lessen the government's burden of proof.

In 1971, this court expressed concern about a jury instruction that "a reasonable doubt can be defined as a strong and abiding conviction that still remains after careful consideration of all the evidence." *United States v. Flannery,* 451 F.2d 880, 882–83 (1st Cir.1971). The court in *Flannery* warned that use of language such as "strong and abiding conviction" was inappropriate because the burden of proof was on the government. *See id.* at 883.

The conclusion that challenges to Simpson's jury instructions were not unavailable at the time of his trial and appeal is buttressed by this court's 1972 decision in *United States v. MacDonald,* 455 F.2d 1259 (1st Cir.1972), which expressed concern about defining reasonable doubt in terms of "proof to a moral certainty, proof beyond a reasonable doubt for which you can give a reason, and proof for which you can state an intelligent reason." *Id.* at 1262–63 (internal quotation marks omitted). The court cautioned against such variations as "flirting unnecessarily with an impermissible lessening of the government's burden of proof." *Id.* at 1263. Indeed, in *United States v. Indorato,* 628 F.2d 711 (1st Cir.1980), we described *MacDonald* as a case in which we indicated our uneasiness with moral certainty and reasonable certainty instructions. *See id.* at 720.

Earlier decisions of this court are fatal to Simpson's unavailability claim. Based on *Winship* and *Flannery,* this court twice concluded that a challenge to certain jury

instructions was available *in 1973* and that the failure to raise those challenges at trial could not constitute "cause" for procedural default in order to overcome an independent and adequate state ground for habeas purposes. *See Breest v. Cunningham,* 784 F.2d 435, 436 (1st Cir.1986); *Breest v. Perrin,* 655 F.2d 1, 4 (1st Cir.1981). The instructions at issue referred to moral certainty, to decisions of importance and seriousness in the jurors' own lives, and to strong and abiding doubt. We think they are no different in kind than the instructions at issue here. Our decisions in *Cunningham* and *Perrin* require the rejection of Simpson's unavailability argument as a basis for establishing cause.

Even were we not bound, we would reach the same conclusion by examining other relevant precedent in Massachusetts and the First Circuit. In this court, challenges had been raised to a "moral certainty" instruction in a reported decision on habeas corpus in 1980. *See Bumpus v. Gunter,* 635 F.2d 907, 910–13 (1st Cir. 1980). *Bumpus* involved an SJC affirmance on direct appeal in 1972. *See Commonwealth v. Bumpus,* 362 Mass. 672, 290 N.E.2d 167 (1972), *vacated,* 411 U.S. 945, 93 S.Ct. 1941, 36 L.Ed.2d 407 (1973), *aff'd on rehearing,* 365 Mass. 66, 309 N.E.2d 491 (1974). Counsel for Bumpus had raised, in state court on direct appeal in the early 1970s, challenges to instructions that used the "important questions" analogy. *See id.* at 175. The SJC held in 1972 that the use of the example of serious decisions in people's lives to illustrate the seriousness of the issue before the jury could raise concerns, but was permissible in the case at hand given the instructions as a whole. *See id.* The SJC also noted that it had generally approved of "important questions" instructions in response to a challenge in a 1971 decision. *See id.* (citing *Commonwealth v. Libby,* 358 Mass. 617, 266 N.E.2d 641, 644 (1971)). Thus, challenges to instructions analogizing reasonable doubt to serious questions in people's lives were being made in the state courts by 1971.

By 1974, counsel for Bumpus had brought a habeas petition in the federal district court and, by amendment to his pleadings, in 1976 had raised challenges to the "moral certainty" instructions given at his trial. *See Bumpus v. Gunter,* 452 F.Supp. 1060, 1060–62 (D.Mass.1978). Thus, by 1976, a habeas petitioner in the federal district court was raising challenges to an instruction on "moral certainty," which was defined by reference to decisions of importance (such as whether to have potentially fatal heart surgery). *See id.* at 1062. The federal district court found the *Bumpus* instructions to be constitutionally erroneous in a decision issued in February 1978. *See id.* at 1063. In so doing, the federal district court relied on this court's decision in 1978 in another habeas case, *Dunn v. Perrin,* 570 F.2d 21 (1st Cir.1978).

*Dunn* also illustrates that challenges similar to the ones petitioner now makes were being made at times before Simpson's trial and appeal. In *Dunn,* this court held that a series of questionable formulations defining reasonable doubt, while perhaps not error standing alone, were error in combination. *See Dunn,* 570 F.2d at 23–25. The first formulation included a definition of reasonable doubt: "doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason." *Id.* at 23. The second formulation was one equating reasonable doubt to a doubt that cannot "be readily or easily explained away, but rather such a strong and abiding conviction as still remains after careful consideration." *Id.* at 24. The third formulation referred to moral certainty. *See id.* The court noted that there was a difference among the authorities about the advisability of such moral certainty instructions, citing to 1956 and 1976 opinions. *See id.* *Dunn* finally rejected a formulation defining reasonable doubt as doubt which would cause one to act or "refrain from acting" in connection with transactions of "impor-

tance and seriousness." *Id.* at 23–24. In discussing these various formulations, *Dunn* relied on *MacDonald* and *Flannery* and cited to cases dating to 1965. *See id.*

▮ In sum, even applying the *Reed* standard for unavailability, Simpson has not met his burden of showing that his three challenges to his jury instructions were not reasonably available to counsel at the time of trial or appeal.[9]

Because Simpson has not met this burden, he has not shown "cause" for his procedural default. Because there is neither "cause" nor "actual innocence," there is no exception to the rule that the state court's determination of procedural default is an independent and adequate state ground.[10] For that reason, the federal court sitting in habeas is precluded from hearing the merits of Simpson's challenge. The district court was in error, the issuance of the writ of habeas corpus is *reversed*, the writ is *vacated*, and the petition is *dismissed.* So ordered.

---

[9] The Supreme Judicial Court, on a question of state law, has reached a similar conclusion, albeit only in dicta. In *Therrien*, the court noted that there was some merit to the Commonwealth's argument that Therrien had not met the requirement of newness under § 33E. *See Therrien*, 703 N.E.2d at 1177 n. 4. Therrien had been tried for murder in 1975 and had not challenged the moral certainty jury instructions during his trial. The gatekeeper Justice permitted the appeal to go forward "in light of recent cases criticizing the use of 'moral certainty' language," but also permitted the Commonwealth to argue that the claim was neither new nor substantial. *Id.* at 1177 & n. 3. The SJC bypassed that question to hold that the instructions as a whole were constitutionally acceptable, but inserted a long footnote explaining that problems with the moral certainty language had been foreshadowed by cases, inter alia, in 1954 and 1965. *See id.* at 1177 n. 4.

[10] Because Simpson has not established cause, we need not consider whether he has established prejudice. To excuse his procedural default, he must establish both. *See Bousley,* 118 S.Ct. at 1611.