USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2048

 KENNETH P. PHOENIX,

 Petitioner, Appellant,

 v.

 JAMES MATESANZ,

 Respondent, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS
 
 
 [Hon. Reginald C. Lindsay, U.S. District Judge]
 
 
 
 Before
 
 Torruella, Chief Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Selya, Circuit Judge.
 
 
 
 
 Robert L. Sheketoff with whom Sheketoff & Homan was on brief
for appellant.
 William J. Meade, Assistant Attorney General, Commenwealth
of Massachusetts, with whom Thomas F. Reilly, Attorney General,
Commenwealth of Massachusetts, was on brief for appellee.

August 19, 1999

 
 
 CAMPBELL, Senior Circuit Judge. Kenneth P. Phoenix
appeals from the district court's denial of his petition for habeas
corpus relief from his 1988 murder conviction. We affirm the
district court's determination that Phoenix's claim of ineffective
assistance of counsel was not procedurally barred. As to the
merits of the ineffective assistance claim, we remand to the
district court for further proceedings consistent with this
opinion.
 I. FACTS
 On June 3, 1988, Phoenix was convicted of first-degree
murder in the Hampshire Superior Court of Massachusetts. For the
facts of his conviction we look first to the decision of the
Massachusetts Supreme Judicial Court ("SJC") affirming Phoenix's
conviction on direct appeal. See Commonwealth v. Phoenix, 567
N.E.2d 193 (Mass. 1991). 
 Raymond Green was the power plant facility manager at the
Belchertown State School, supervising sixty-three employees,
including Phoenix. He worked in an office on the second floor of
the powerhouse on the school grounds. On August 4, 1986, Green's
secretary found him dead in his office, shot five times by a .22
caliber firearm. The police retrieved pieces of a green scouring
pad from Green's face and from the floor of his office. In a metal
drum on the first floor of the powerhouse, they also discovered a
crumpled brown paper bag and a rolled-up piece of green scouring
pad. The drum was situated next to the entrance to a tunnel system
that connected the powerhouse with other school buildings. 
 The Commonwealth took the position, based largely on
fingerprint and blood evidence found at the scene, that Phoenix had
entered the powerhouse undetected through the tunnel system and
went to Green's office while Green was out getting his lunch. As
part of its theory, the Commonwealth reasoned that Phoenix had
constructed a homemade silencer by wrapping a gun in a green
scouring pad and placing it in a paper bag. When Green returned to
his office, Phoenix allegedly shot him five times at point blank
range. Phoenix escaped through the tunnel system, dumping the bag
and the scouring pad in the metal drum on his way out. The weapon
was not recovered. 
 As indicated, the Commonwealth based its case largely on
its experts' interpretation of certain physical evidence found at
the scene. Examination of the paper bag had revealed several
blood stains, one of which contained a fingerprint. After chemical
treatment, additional fingerprints appeared, only some of which
were identifiable. At trial, the Commonwealth called Dr. Moses
Schanfield, an expert serologist, who testified that the blood from
the one interpretable stain was consistent with Green's blood and
that it could not have been Phoenix's blood. The Commonwealth also
called two fingerprint experts, who stated that each of the
identifiable prints found on the bag belonged to Phoenix. 
 Before trial, Phoenix's counsel, William M. Bennett,
retained Dr. Brian Wraxall, a forensic serologist, to assist in the
defense. According to an affidavit filed subsequent to trial,
Wraxall observed the allotype testing performed by Dr. Schanfield
shortly before trial, and determined that the test results were
scientifically meaningless and that there was no scientific basis
for concluding that the evidence bloodstain was consistent with
Green's blood or not consistent with Phoenix's. He discussed these
conclusions with attorney Bennett, who did not, however, call Dr.
Wraxall to the stand.
 Bennett had also retained Professor Herbert McDonnell, a
fingerprint analyst. Based upon his review of photographs of the 
prints recovered from the paper bag, McDonnell stated in a post-
trial affidavit that he advised Bennett of his opinion that there
was insufficient detail to conclude either that the print was
Phoenix's or that it was not. Bennett never called Professor
McDonnell to the stand.
 II. PROCEDURAL HISTORY
 On December 20, 1988, Phoenix filed a motion for a new
trial on the ground that his trial had been tainted by juror
misconduct. The motion did not mention ineffective assistance of
counsel. The superior court denied the motion on February 6, 1989.
 Phoenix applied for a stay of further execution of
sentence on October 31, 1989. Again, the grounds for that
application did not include ineffective assistance of counsel. On
April 20, 1990, Phoenix filed a supplemental memorandum in support
of his application for a stay, which included an affidavit of Dr.
Wraxall stating, inter alia, his opinion that "no conclusion could
be drawn regarding the types of the donors of the blood on the
paper bag." The Commonwealth moved to strike this affidavit. The
superior court denied Phoenix's application for a stay on May 25,
1990.
 Phoenix also filed a direct appeal of his conviction,
which set forth several grounds but did not raise the issue of
ineffective assistance of counsel. Phoenix, however, sought leave
to supplement the record on appeal to add an affidavit by Dr.
Wraxall concerning the allotype testing. Phoenix, 567 N.E.2d at
199 n.8. The Supreme Judicial Court denied this request, finding
that Phoenix was aware of Dr. Wraxall and his opinions as to the
testing at the time of trial, but that Bennett chose not to call
him to testify as a matter of strategy. Id. On February 28, 1991,
the SJC affirmed Phoenix's conviction pursuant to Mass. Gen. L. ch.
278, 33E. 
 Nearly five years later, on January 22, 1996, Phoenix,
represented by new counsel, filed a second motion for a new trial. 
He alleged that he had been denied effective assistance of counsel
because, inter alia, his trial counsel (1) failed to call Dr.
Wraxall to rebut Dr. Schanfield's trial testimony, and (2) failed
to call Professor MacDonnell to rebut the Commonwealth's
fingerprint evidence. Phoenix asserted that these failures
violated his rights under the Sixth Amendment to the United States
Constitution and Article 12 of the Massachusetts Declaration of
Rights.
 On March 18, 1996, the Superior Court denied Phoenix's
motion without an evidentiary hearing. Upon review of the Wraxall
affidavit, the court noted that it was essentially the same
affidavit that Phoenix had filed in support of his motion for a
stay of further execution of his sentence and that the SJC had
refused to add to the record on direct appeal. Citing Commonwealth
v. Gagliardi, 638 N.E.2d 20 (Mass. 1994), it held that Phoenix had
waived the issue of Bennett's failure to call Dr. Wraxall to
testify by not raising it on appeal or in his first motion for a
new trial. The court also stated that it did not believe that
Bennett's decision not to call Dr. Wraxall as a witness could "be
considered to constitute ineffective representation."
 As to Bennett's failure to call Professor McDonnell to
testify at trial, the court determined that McDonnell's opinion did
not rule out the possibility that the unknown fingerprint was
Phoenix's, and that the Commonwealth's witnesses testified
convincingly that the print did belong to Phoenix. Accordingly,
the court found that McDonnell's testimony would not have been
helpful to Phoenix, and that Bennett was not ineffective in
choosing not to put him on the stand.
 On October 21, 1996, represented by new counsel yet
again, Phoenix sought leave from a single "gatekeeper" justice of
the SJC to appeal the denial of the second motion to dismiss. See
Mass. Gen. L. ch. 278, 33E. He argued that his appellate counsel
had had no opportunity to raise the issue of Wraxall's testimony
since the affidavit was never made part of the record. 
Accordingly, Phoenix contended, the superior court judge erred in
holding that his ineffectiveness claim was waived.
 The single justice denied Phoenix's application on May 8,
1997, after extensive briefing but without an evidentiary hearing. 
He held that although the issue of whether Phoenix waived his
argument regarding the Wraxall affidavit "may be novel," the
underlying issue of ineffective assistance of counsel lacked
substance and thus did not warrant a new trial. Id. (requiring a
motion for a new trial to raise a question that is "new and
substantial"). Noting that "the reliability of the Commonwealth's
testimony on this score had been so thoroughly canvassed both at
trial, by cross-examination by defendant's counsel, and then
examined by the full court on plenary review," the single justice
rejected the ineffective assistance claim as to the Wraxall
affidavit on its merits. Similarly, he upheld the motion judge's
ruling that, in the context of the "strong testimony" by the
Commonwealth's experts, McDonnell's testimony would not have been
helpful to Phoenix's defense, and thus could not support an
ineffective assistance claim. The justice cited neither federal
nor state law in the opinion.
 On January 29, 1998, Phoenix filed a petition for a writ
of habeas corpus pursuant to 28 U.S.C. 2254(d). On July 30,
1998, the district court denied the petition without a hearing. It
held that Phoenix's claim of ineffective assistance was not in
procedural default, but that "the petitioner has failed to
establish that the performance of his counsel at trial in the
Massachusetts Superior Court fell below an objective standard of
reasonableness in light of all the circumstances." The district
court granted a certificate of appealability on September 9, 1998.
 III. ANALYSIS
 Phoenix's habeas petition is governed by the
Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No.
104-132, 110 Stat. 1214 ("AEDPA"), which provides, in relevant
part: 
 An application for a writ of habeas corpus on behalf of
 a person in custody pursuant to the judgment of a State
 court shall not be granted with respect to any claim that
 was adjudicated on the merits in State court proceedings
 unless the adjudication of the claim-- 

 (1) resulted in a decision that was contrary to, or
 involved an unreasonable application of, clearly
 established Federal law, as determined by the Supreme
 Court of the United States.... 

28 U.S.C. 2254(d). In reviewing a ruling on a petition for a
writ of habeas corpus, we examine the district court's legal
conclusions de novo. Simpson v. Matesanz, 175 F.3d 200, 205 (1st
Cir. 1999).
 A. Procedural default
 Habeas review in a federal court is available as to a
claim "adjudicated on the merits in State court proceedings," but
only in instances affecting or involving clearly established
federal, not state, law. See id. at 205-06, quoting 28 U.S.C. 
2254(d). These requirements reflect the long-standing rule that
federal courts do not review state court decisions that rest on
independent and adequate state grounds. Id., citing Trest v. Cain,
522 U.S. 87, 118 S.Ct. 478, 479-80 (1997). Such grounds exist
where "the state court declined to hear [the federal claims]
because the prisoner failed to meet a state procedural
requirement." Id. at 206, quoting Brewer v. Marshall, 119 F.3d
993, 999 (1st Cir. 1997), cert. denied, 118 U.S. 1172 (1998). In
such a case, "[c]onsiderations of comity and federalism bar the
federal court's review." Id.
 Because Phoenix was convicted of first-degree murder,
his appeals from the denial of state court collateral attacks on
his conviction after his direct appeal were governed by
Massachusetts General Laws chapter 278, 33E. That provision
permits further review of a defendant's claim by the SJC only where
a gatekeeper justice of the SJC finds that the claim is "new and
substantial." Mass. Gen. L. ch. 278, 33E. The gatekeeper's
determination is final and unreviewable. Commonwealth v. Ambers,
493 N.E.2d 837, 841 (Mass. 1986).
 The Commonwealth argues that the district court erred in
holding that Phoenix's ineffective assistance claim was not
procedurally barred. It contends that the gatekeeper justice's
decision pursuant to 33E did not reach the merits of that claim
and was independent of federal law. The Commonwealth contends,
accordingly, that the decision constituted a procedural bar to
habeas review.
 We disagree in the present special circumstances. We
recognize that most frequently a single justice's 33E
determination that an issue is not "new and substantial" will
depend on state procedural or, perhaps, substantive law, ruling out
federal habeas review. See McLaughlin v. Gabriel, 726 F.2d 7, 9
(1st Cir. 1984) (in general, 33E determination does not reach
merits of claim, but is merely a state law "screening" device). In
Simpson, however, we suggested that this might not always be true,
stating that a denial of review under 33E is an independent and
adequate state ground "where there has been procedural waiver
below." Simpson, 175 F.3d at 206, 207 (emphasis supplied). We
went on to say that, hypothetically, habeas review could be
appropriate where a gatekeeper justice's denial under 33E was
based on findings, supported by federal law, that the petitioner's
claim was new but not substantial. Id. at 207 n.4. See also
McLaughlin, 726 F.2d at 9 (possibility of special circumstances in
which gatekeeper determines federal constitutional question).
 Whether the state court decision here is or is not
impervious to habeas review depends on whether it rests, expressly
or inferentially, on a state-law procedural waiver (or some other
state law consideration), or whether, instead, it involves the
resolution of the merits of Phoenix's federal constitutional claim. 
See Simpson, 175 F.3d at 206-07; Burks v. DuBois, 55 F.3d 712, 716
(1st Cir. 1995). In determining the above, the opinion of the SJC
gatekeeper justice, as the "last reasoned opinion" of a state court
addressing those claims, is the focus of our attention. See Ylst
v. Nunnemaker, 501 U.S. 797, 801 (1991); see also Simpson, 175 F.3d
at 207. 
 In Simpson, the petitioner had filed several motions for
a new trial challenging the trial court's jury instructions, each
of which was denied on procedural waiver grounds. 175 F.3d at 203-
04. When the petitioner sought leave to appeal to the SJC the
denial of his sixth motion for a new trial, the gatekeeper SJC
justice denied his 33E application, without explanation, on the
ground that he had not presented "new or substantial issues." Id. 
Citing an unpublished district court opinion, Little v. Murphy,
1998 WL 704415 (D. Mass. May 21, 1998), the federal habeas court
had held that the "failure to get past the gatekeeper does not by
itself block federal habeas review unless the single Justice
clearly bases his denial of leave to appeal on a procedural bar." 
Id. at 204. 
 We reversed the district court and held that because the
lower state court decisions were based on procedural waiver, "the
denial of review under 33E is an independent and adequate state
ground that bars federal habeas review." Id. at 206. Without
deciding whether Little was good law, we distinguished that case on
the ground that, inter alia, the state trial court in Little had
reached the merits of the petitioner's claims and had held
evidentiary hearings. Id. at 207. 
 The question now before us, therefore, is whether the SJC
gatekeeper's determination that Phoenix's ineffective assistance
issue was perhaps new but is not substantial constitutes
independent and adequate state grounds precluding federal habeas
review. If we look solely at the decisions in the superior court,
this case would fall somewhere between Little and Simpson. As in
Little, the state trial court reached the merits of Phoenix's
ineffective assistance argument as regards the McDonnell affidavit;
but, as in Simpson, the state trial court cited waiver as a ground
for denying post-conviction relief as regards the Wraxall
affidavit, and the court held no evidentiary hearing. 
 The SJC gatekeeper justice, however, in determining for
purposes of 33E whether Phoenix's ineffective assistance claim
was "substantial," considered the merits of that claim in respect
both to the Wraxall and McDonnell affidavits. "If the last state
court to be presented with a particular federal claim reaches the
merits, it removes any bar to federal court review that might
otherwise have been available." Ylst, 501 U.S. at 801. Here,
unlike the situation in Simpson, it cannot be inferred that the
gatekeeper denied relief on the procedural ground discussed by the
superior court in reference to the Wraxall affidavit. The
gatekeeper justice specifically indicated that he was not
dismissing Phoenix's ineffective assistance claim on the ground of
lack of novelty or on some other theory compatible with waiver. 
Instead, he expressly determined that the ineffective assistance
claim lacked substance, thus reaching its merits and superseding
the superior court's earlier finding of waiver as to the Wraxall
affidavit. See id. Hence, like the district court, we do not
conclude that habeas review is barred because the challenged state
decision rests upon some procedural bar erected by state law.
 Our inquiry does not, of course, end here. Even holding
that the gatekeeper justice's decision rested not on procedural
default but on the merits of Phoenix's ineffective assistance
claim, we may not entertain habeas review if the merits
determination was grounded in state law. Cf. Simpson, 175 F.3d at
206 n.4. The Commonwealth suggests that because the single
justice's decision did not specifically cite to federal law, it
rests on independent and adequate state grounds. 
 There is no force to that contention. The Supreme Court
recently refined its explanation of the circumstances under which
courts will presume there is no independent and adequate state law
ground for the state court's decision: 
 In habeas, if the decision of the last state
 court to which the petitioner presented his
 federal claims fairly appeared to rest
 primarily on the resolution of those claims,
 or to be interwoven with those claims, and did
 not clearly and expressly rely on an
 independent and adequate state ground, a
 federal court may address the petition.
 
Coleman v. Thompson, 501 U.S. 722, 735 (1992)(emphasis supplied). 
 Phoenix presented his ineffective assistance claim to the
state courts expressly under federal and state law: he cited, as a
basis of the claim, both the Sixth Amendment to the United States
Constitution and Article 12 of the Massachusetts Declaration of
Rights, listing federal as well as state cases in support of his
argument. If either constitutional ground were correct, he was
entitled to prevail, since the federal constitution trumps the
state's, while the state is allowed to choose to provide a stricter
level of protection than the federal. See Bustop v. Bd. of Educ.
of Los Angeles, 439 U.S. 1380, 1381 (1978); Oregon v. Hass, 420
U.S. 714, 719 (1975). State courts, moreover, have the duty and
right to construe and apply both the federal and state
constitutions. See Boston Stock Exchange v. State Tax Comm'n, 429
U.S. 318, 320 (1977). Thus, for the single justice to have
determined that Phoenix's ineffective assistance claim lacked
merit, we can only assume that he examined it under the relevant
federal as well as state standard. We conclude that the single
justice's determination that Phoenix's ineffective assistance claim
was insubstantial necessarily rejected Phoenix's contrary assertion
made under the federal constitution. 
 B. Ineffective assistance of counsel
 Having determined that there is no procedural bar to
Phoenix's ineffective assistance claim and that the single
justice's dismissal of the claim necessarily involved the
application of federal law, we turn to whether the district court
properly dismissed the habeas petition on the ground that the
federal ineffective assistance claim lacked merit. See Strickland
v. Washington, 466 U.S. 668 (1984) (whether counsel's performance
fell below an objective standard of reasonableness and resulted in
prejudice to defendant). Citing Strickland, the district court
held that Phoenix "failed to establish that the performance of his
counsel at trial in the Massachusetts Superior Court fell below an
objective standard of reasonableness in light of all the
circumstances." Phoenix argues that this conclusion was incorrect. 
 Under AEDPA, the district court must determine whether 
the adjudication of the petitioner's claim "resulted in a decision
that was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court
of the United States." 28 U.S.C. 2254(d). This represents a new
statutory framework for habeas petitions. Before the passage of
AEDPA, a petitioner was entitled to de novo review of his
constitutional claims. See Martin v. Bissonette, 118 F.3d 871,
874-75 (1st Cir. 1997); see also Scarpa, 38 F.3d at 9. The
district court's one-page opinion does not indicate the scope of
its analysis.
 This is not a case in which significant independent
evidence supports the conviction and thereby reduces the chance
that Phoenix's conviction would be affected by the decision whether
to call the rebuttal experts in question. Here, the Commonwealth's
case rested almost entirely on the blood and fingerprint evidence
challenged by the Wraxall and McDonnell affidavits. The superior
court dismissed the importance of McDonnell's testimony on the
ground that he did not deny that the fingerprints could be those of
Phoenix. McDonnell simply opined that the bloodstained prints were
inadequate for accurate expert analysis. However, where the
question of conviction turns almost entirely on the reliability of
identifying the prints, McDonnell's opinion goes directly to
whether the prosecution's evidence sufficed to establish guilt
beyond a reasonable doubt. This is not to say that Phoenix's
ineffective assistance argument necessarily satisfies the rigorous
standard set forth in AEDPA, which requires him to show that the
single justice's decision contravened clearly established federal
law as determined by the Supreme Court, or that it met the standard
set forth in Strickland. We say merely that the circumstances
warrant a more thorough and explicit consideration of his claim in
the district court than has so far occurred.
 As the state trial court and SJC single justice
indicated, consideration of Phoenix's ineffective assistance claim
appears to properly encompass an evaluation, inter alia, not only
of the Wraxall and McDonnell affidavits, but of the testimony of
the Commonwealth's experts and of Bennett's cross-examination of
those experts. It does not appear whether the district court had
before it the trial transcripts necessary to such a review. On
remand, the district court should review the essential parts of the
trial record, and can also determine whether or not testimony from
counsel and other witnesses is called for.
 We vacate the order of dismissal and remand for further
proceedings consistent with this opinion.